```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PAMELA RIVERA, individually and as   :
natural mother and guardian of KHAYRI :
RIVERA, an infant,                   :
                                     :     04 CIV. 9807 (DLC)
                  Plaintiff,         :
                                     :     OPINION & ORDER
        -v-                          :
                                     :
NATIONAL PASSENGER RAILROAD SERVICE, :
                                     :
                  Defendant.         :
------------------------------------X
```

Appearances:

For plaintiff:
Jan Hudgins Riley
Lenoir & Riley, Esqs.
501 West 145th Street
New York, NY 10031

For defendant:
Robert J. Paliseno
Smith Mazure Director Wilkins Young &
Yagerman, P.C.
111 John Street
20th Floor
New York, NY 10038

DENISE COTE, District Judge:

Plaintiff Pamela Rivera ("Rivera") brings this action to recover damages for injuries sustained by her minor daughter, Khayri Rivera ("Khayri"), on an escalator in New York City's Pennsylvania Station ("Penn Station") maintained by defendant National Passenger Railroad Service ("Amtrak"). Rivera claims that Amtrak was negligent in performing inspections of the escalator. Although she has submitted no direct evidence of Amtrak's negligence, she argues that its negligence can be inferred through the res ipsa loquitur doctrine. Defendant has

moved for summary judgment.  Because Rivera has not shown that the escalator was in Amtrak's "exclusive control" prior to the accident, the res ipsa loquitur doctrine is not appropriate here, and defendant's motion is granted.

Background

The following facts are taken in the light most favorable to plaintiff.  On the morning of May 25, 2003, Rivera and her then-11-year-old daughter Khayri came into Manhattan from their home in New Jersey so that Rivera could attend a meeting.  Rivera and Khayri intended to return home that afternoon on a New Jersey Transit train departing from New York City's Pennsylvania Station.  To reach the departure platform, which was located below street-level, the Riveras took an escalator identified by the maintenance staff at Penn Station as "7MG."  Although it was the Sunday of the long Memorial Day weekend, Rivera testified that the escalator was crowded, with people on every step.  Some of these passengers may have been carrying luggage.[1]

When Khayri reached the end of the escalator, she realized she could not get off, as the left leg of her jeans had been torn and become lodged in the "metal grating" at the bottom of the escalator.  As she struggled to get free, Khayri noticed that a large piece of metal was sticking out of the left side of the

---

[1] At her deposition, Khayri testified that she saw someone on the escalator with a briefcase or a wheeled suitcase.  In opposition to this motion, however, Rivera filed an affidavit stating that she "saw no one with a briefcase, luggage or the like."

2

escalator. It was later identified as being part of the cover plate -- a stainless steel cap made of multiple sections, which runs along the base of each side of the escalator. Rivera said that it appeared as though the bottom portion of this section of the cover plate was still attached to the escalator, while the top portion had become dislodged and had been bent downward so that it was now in the shape of a U.

After a few seconds, Khayri managed to free herself and realized that she had sustained a deep gash in her left leg. She was taken to Bellevue Hospital, where she received 15 stitches. Because of the injury, Khayri missed a week of school and had to walk with a cane for approximately one month. She is also planning to consult with plastic surgeons about remedies for the scars that have developed. Khayri's daily activities are not impaired as a result of the incident.

Amtrak is the owner of Penn Station. The Long Island Rail Road ("LIRR") is the tenant of the portion of the station in which escalator 7MG is located, but Amtrak employees do the maintenance work.[2] Like all escalators and elevators in Penn Station, escalator 7MG is inspected on a once-weekly basis[3] by a team that includes a foreman, an electrician, and machinists.

---

[2] The parties have not explained the relationship between Amtrak and LIRR -- nor the division of responsibility for inspection and upkeep of the relevant equipment -- in any detail. Amtrak does not, however, appear to dispute that it is ultimately liable for the condition of the facility.

[3] The escalators are also inspected periodically in connection with scheduled maintenance. Those inspections are not at issue here.

This weekly inspection is primarily visual. When inspecting the cover plates, the team typically looks to see if any section is not properly secured. Charles Schrader ("Schrader"), the assistant chief engineer for LIRR who oversees maintenance for Penn Station, testified that a visual inspection would reveal any loosening of the screws or rivets that hold the plates in place. Schrader stated that even if there were a problem with a screw or rivet, however, a plate is unlikely to come loose because it is also held in place by the adjacent pieces of the cap. The last inspection of escalator 7MG prior to the accident was performed two days earlier, on May 23,[4] and the notes from that inspection do not reflect any problems with the cover plates.[5]

After the incident, escalator 7MG was out of service until sometime in July, while defendant waited for a replacement cover plate to arrive. Amtrak held the damaged cap for approximately six months and then threw it away. Rivera then filed this action on December 14, 2004, making a claim of common law negligence against Amtrak. She served Amtrak on February 8, 2005, nearly two years after the accident.

---

[4] There is another document that appears to indicate that an inspection was performed on the morning of May 25, but plaintiff disputes whether such an inspection ever happened, and defendants have not submitted any definitive testimony on that point.

[5] Plaintiff implies that because the notes make no reference to an inspection of the metal caps, Amtrak did not conduct such an examination. Schrader testified, however, that the caps would have been checked as part of the May 23 examination, and any problems with them would have been mentioned in the foreman's notes. Rivera has submitted no evidence to counter Schrader's testimony.

Discussion

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed. R. Civ. P.; accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

I. Negligence

The legal standards applicable to Rivera's claim are essentially uncontested. It is well established that, under New York law, a "defendant stands liable in negligence only for breach of a duty of care owed to the plaintiff." Sanchez v. State of New York, 99 N.Y.2d 247, 252 (2002). The owner of commercial property is not "an insurer of the safety of its patrons," Gilson v. Metropolitan Opera, 5 N.Y.3d 574, 577 (2005)

5

(citation omitted), and its duty is simply to "exercise reasonable care in maintaining [the] property in a reasonably safe condition under the circumstances." Galindo v. Town of Clarkstown, 2 N.Y.3d 633, 636 (2004). A defendant cannot breach the "reasonable care" standard without "actual or constructive notice of the condition [that caused plaintiff's injury] and a reasonable time to correct or warn about its existence." Mercer v. City of New York, 88 N.Y.2d 955, 956 (1996).

Plaintiff does not clearly articulate how she believes Amtrak was negligent. She appears to suggest, however, that it was not "reasonable under the circumstances of a heavily traveled holiday weekend" for Amtrak to have failed to inspect the escalator for two days prior to the incident. Therefore, she argues, Amtrak had "constructive notice of the dangerous condition of the protruding metal cap." Rivera has not submitted any evidence that would allow a jury to conclude that weekly inspections of heavily used escalators are unreasonable. She has not suggested, much less shown, that it is standard practice to make more frequent inspections; nor has she provided evidence that incidents like this one are likely to occur when there are seven-day gaps between inspections. In contrast, Schrader testified that in the ten years he had worked as assistant chief engineer, he had never seen an accident involving the metal caps.[6] Plaintiff's unsupported assertion that Amtrak's duty of

---

[6] Rivera argues that there is "a genuine material issue as to whether or not there were similar incidents on Escalator 7MG," but she has offered absolutely no evidence to contradict

6

care required more frequent inspections therefore cannot defeat summary judgment.

This does not, however, end the inquiry, since New York recognizes that "[o]ccasionally ... a plaintiff to whom the defendant owes a duty of care is not in a position to prove directly what actually happened or that a specific act of the defendant was negligent." Morejon v. Rais Construction Co., No. 61, 2006 N.Y. LEXIS 1256, at *1 (N.Y. May 9, 2006). In such cases, the doctrine of res ipsa loquitur allows the fact-finder to infer that the defendant was negligent based on circumstantial evidence alone. Id. Res ipsa loquitur is only available to a plaintiff when the following three criteria are met:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

Id. at *8-9 (citation omitted). "Once plaintiff satisfies the burden of proof on these three elements, the res ipsa loquitur doctrine permits the jury to infer negligence from the mere fact of the occurrence." States v. Lourdes Hospital, 100 N.Y.2d 208, 212 (2003).

Here, defendant does not appear to dispute that plaintiff could demonstrate the first and third criteria. The only issue is whether the cover plates were within Amtrak's "exclusive

---

Schrader's statement. As noted above, this sort of "mere allegation[] or denial," Rule 56(e), Fed. R. Civ. P., cannot defeat summary judgment.

7

control."  The purpose of this requirement is "simply to eliminate within reason all explanations for the injury other than the defendant's negligence." Dermatossian v. New York City Transit Authority, 67 N.Y.2d 219, 227 (1986).  In order to make such a showing, it is "not necessary for the plaintiff to altogether eliminate the possibility of other causes of the injury-causing malfunction, but only that their likelihood must be so reduced that the greater probability lies at defendant's door." Stone v. Courtyard Mgmt. Corp., 353 F.3d 155, 158 (2d Cir. 2003) (citation omitted).  The fact that third parties had access to the instrumentality that caused an injury does not preclude use of the res ipsa loquitur doctrine "so long as adequate evidence [is] presented that allow[s] a jury to exclude the actions of such third parties as significant causes of the injury." Potthast v. Metro-North R.R. Co., 400 F.3d 143, 151 n.9 (2d Cir. 2005).

Rivera has not provided sufficient evidence for a jury to make such a finding.  It is undisputed that the accident took place on a holiday weekend with a high volume of traffic passing through Penn Station.  As the plaintiff herself testified, the escalator was, in fact, crowded at the time of the accident. Defendant suggests that the metal cap was probably dislodged by someone hitting it with a heavy object such as a suitcase, perhaps one with a sharp edge.  Plaintiff has not even suggested an alternate theory, much less submitted evidence that would support it.  A verdict in her favor, then, could only be based on

8

"mere speculation or guesswork," which is insufficient as a matter of law to support a finding of negligence. <u>Bernstein v. City of New York</u>, 69 N.Y.2d 1020, 1021 (1987).

The facts here are analogous to those in <u>Ebanks v. New York City Transit Authority</u>, 70 N.Y.2d 621 (1987), where plaintiff was injured when he caught his foot in a gap between the escalator step and sidewall. At trial, the jury was instructed that it could use the doctrine of <u>res ipsa loquitur</u> to infer that the defendant was liable in maintaining the escalator. The New York Court of Appeals, however, held that

> [t]he proof did not adequately refute the possibility that the escalator -- located in a subway station used by approximately 10,000 persons weekly -- had been damaged by a member of the public either through an act of vandalism or, as defendant's witness had suggested, by permitting an object such as a hand truck to become caught in the space between the step and sidewall.

<u>Id.</u> at 623. In reaching this conclusion, the Court cited its previous holding that the New York City Transit Authority could not be held liable for an injury caused by a defective grab handle on a bus that was "continuously available for use by defendant's passengers." <u>Dermatossian</u>, 67 N.Y.2d at 228.

The rationale of the <u>Dermatossian</u> Court, which was recently cited with approval by the Second Circuit, <u>Stone</u>, 353 F.3d at 158, is applicable here. Rivera has not provided evidence that could serve as the basis for a finding that the cover plates were in Amtrak's "exclusive control" prior to the accident. Therefore, an inference of negligence through use of the <u>res ipsa loquitur</u> doctrine is not appropriate.

9

II. Spoliation

Rivera argues that, because defendant threw away the metal cap that caused Khayri's injuries, an adverse inference should be drawn against Amtrak. An adverse inference based on the spoliation of evidence requires a showing:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. Degeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted).

Plaintiff has not met any of the three requirements. Defendant retained the metal cap for at least six months after the incident. When it was thrown away, plaintiff had not yet commenced any legal action, nor had she put Amtrak on notice that she was likely to do so, nor had she made any request to examine the capping. Indeed, she did not serve her complaint in this matter until nearly two years after the incident. She has therefore not identified any basis for concluding that Amtrak was under an obligation to preserve the cap.[7] Furthermore, although a culpable state of mind can be demonstrated through a "showing

---

[7] Plaintiff suggests that the fact that the word "claim" appears on an undated diagram of the damaged escalator in defendant's possession indicates that Amtrak "knew that there was at least one claimant raising questions regarding this incident." Rivera has submitted no evidence that "claim" should be construed in this way. In any event, as noted above, Rivera does not allege that she made any sort of "claim" before the cap was thrown out.

that the evidence was destroyed knowingly ... or negligently," id. at 108 (citation omitted), plaintiff has submitted no evidence here that could establish either.

More importantly, even if plaintiff could show that Amtrak was under a duty to preserve the capping and disposed of it with a culpable state of mind, she has utterly failed to show that the piece of metal would have been relevant to her case. As the Second Circuit has held,

> "relevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.

Id. at 108-09 (citation omitted). Rivera has not offered a theory as to how the escalator was damaged, nor has she stated what she believes an examination of the metal capping would have shown. Indeed, she has not even described what adverse inference should be drawn from the alleged spoliation. Under these circumstances, plaintiff has failed to demonstrate that any sanction for spoliation of evidence would be appropriate.

Conclusion

Defendant's motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

SO ORDERED

Dated: New York, New York
       August 9, 2006

                                        /s/ Denise Cote
                                        DENISE COTE
                               United States District Judge